UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,

               -v-                                      18 Cr. 390-15 (PAE)

CHRISTOPHER SIMON,                               ORDER

                        Defendant.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Christopher Simon seeking his release from federal correctional institution ("FCI") Fort Dix pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents to his health. *See* Dkts. 467 ("Def. Ltr."), 499 ("Def. Mem."). The Government opposes his request. *See* Dkt. 504 ("Gov't Mem."). For the reasons that follow, the Court grants Simon's motion.

Between 2015 and 2018, Simon was involved in a large-scale drug-trafficking scheme headed by Maurice Hartley, selling heroin mixed with fentanyl as a street-level dealer. *See* Dkt. 360 ("Sent. Tr.") at 32. Over the course of his involvement in that conspiracy, Simon was responsible for the distribution of thousands of glassines of fentanyl-laced heroin. *Id.* at 33. On December 19, 2018, he pled guilty to one count of conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. *Id.* at 2. On April 22, 2019, the Court sentenced Simon to a sentence significantly below the Guidelines range of 100 to 125 months' imprisonment. *Id.* at 47–48. Instead, the Court imposed a sentence of 66 months' imprisonment, to be followed by five years' supervised release. *Id.* at 48. Simon has been in custody since his arrest on June 5, 2018. *See* Gov't Mem. at 2. His estimated release date is February 11, 2022. *Id.*

On June 12, 2020, the Court received a compassionate release motion from Simon, seeking a modification of his sentence based on the COVID-19 pandemic. *See* Def. Ltr. at 4–6. Thereafter, the medical unit at FCI Fort Dix submitted to the warden of the facility a request for Reduction in Sentence. *See* Dkt. 493 at 1. On August 17, 2020, after granting several extensions of time pending the negotiation of Simon's release plan pursuant to that request, the Court directed Simon's counsel to file a memorandum in support of his motion and the Government to respond. Dkt. 498. That order also recognized the substantial claims presented by Simon's motion, and directed the parties to identify any meaningful differences between Simon's claims and those presented by two of Simon's co-defendants, Edward Davies and Louis Brown, whose compassionate release petitions the Court previously found meritorious. *Id.* On August 20, 2020, Simon's counsel filed a memorandum in support. *See* Def. Mem. On August 24, 2020, the Government filed its opposition. *See* Gov't Mem.

Simon argues that his advanced age and serious medical conditions heighten his vulnerability to COVID-19. Def. Mem. at 1. The Government, in opposition, argues that Simon's release is unwarranted under the factors set out in 18 U.S.C. § 3553(a) and that he has not proposed an adequate post-release plan to minimize the chances that he will recidivate. *Id.*

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (citing 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[1] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant must also not be a danger to the community, and the reduction must be consistent with the Commission's policy statement. *Id.* § 1B1.13(2)–(3).

The first of these factors clearly favors Simon's release. The COVID-19 pandemic is indeed extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. And the crowded nature of jails and prisons presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[2] Recognizing that the realities of life as an inmate present added challenges for a heightened-risk inmate who contracts the virus to care for himself, in the past few months

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *See Ebbers*, 432 F. Supp. 3d at 422–23, 427.

[2] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[3] and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.[4]

Simon argues that he is especially vulnerable to the most serious effects of COVID-19 because he is age 72 and has a host of medical conditions, which he identifies as HIV, chronic obstructive pulmonary disorder ("COPD"), Hepatitis C, prostate cancer, and hypertension. Def. Mem. at 2, 7. Simon's serious medical conditions, compounded by his age, indeed distinguish him from the vast majority of defendants who have sought compassionate release before this Court. And the Government, to its credit, forthrightly recognizes that Simon is at a significantly heightened risk of complications from COVID-19 compared to the average person incarcerated

---

[3] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[4] *See, e.g.*, *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (ordering compassionate release of defendant with asthma who had served 17 months of a 24-month sentence, was scheduled for release in four months, and was not a danger to the public).

at FCI Fort Dix and that he "has supplied a basis for finding that extraordinary and compelling circumstances exist under Section 3582 based on his proffered medical conditions." Gov't Mem. at 11.

Instead, the Government opposes compassionate release by arguing (1) that Simon's release would be inconsistent with the § 3553(a) factors because there is a significant risk of recidivism and that Simon would pose a danger to his community if released; and (2) that Simon's proposed release plan is insufficient to safeguard the community. *Id.* at 11–14. The Court holds with Simon on both points.

First, the Court is satisfied that Simon presents a relatively minimal "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). To be sure, Simon participated in a serious heroin- and fentanyl-trafficking conspiracy. And, at sentencing, the Court noted that "unavoidably the public will benefit to some degree when [Simon is] in a place where the public is not exposed to the risks" of his continued distribution of narcotics. Sent. Tr. at 42. But Simon played a low-level role, as a street seller, and did so "out of a desperate need to feed" his own severe heroin addiction. Sent. Tr. at 41; *see also id.* at 44 ("I accept that your crimes were committed largely out of the thirst for money to fuel your habit."); *id.* ("It's clear to me that your ongoing drug problems steered you into continued drug selling."). And Simon now asserts, without contradiction, that he has enrolled in the BOP's Residential Drug Abuse Program, which the BOP describes as its "most intensive treatment program,"[5] and that he would have graduated in June if not for an infraction unrelated to drug use. Def. Ltr. at 2. This affords the Court a degree of hope that—if supervised and subject to the special condition of drug treatment that the

---

[5] *Substance Abuse Treatment*, Fed. Bur. of Prisons, https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp.

5

Court previously imposed—he has the capacity to avoid returning to drug usage and the drug-dealing that he used to fund his habit. Simon's age and, especially, sharp physical decline further reduce the risk that he would engage in continued drug trafficking or any violent crime.[6] The Court therefore concludes that Simon's release would not unduly endanger the community.

The Court next considers the § 3553(a) factors. Two factors relevant here in light of the COVID-19 pandemic are the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). These factors clearly favor Simon's early release in light of the pandemic for the reasons discussed above.

The Government argues, however, that two additional § 3553(a) considerations nevertheless counsel against Simon's release: (1) the need to provide just punishment reflecting the seriousness of Simon's offense; and (2) the need for specific deterrence, especially in light of Simon's extensive criminal history. *See* Gov't Mem. at 11–12 (Simon has more than 40 known prior convictions). In light of the severity of Simon's conduct and his likelihood of recidivism, the Government contends that a reduction in sentence of the magnitude Simon seeks is incompatible with the § 3553(a) factors, and that the original sentence imposed remains the only one that is just and reasonable.

---

[6] There is little evidence that Simon has any propensity toward violence, at least today. *See* Sent. Tr. at 38 ("[S]ome of the earlier offenses . . . have a suggestion of violence. However, that is not true, as I read it, of any of the latter ones."). *Id.* And the Government has not claimed that Simon has engaged in other violent acts or is dangerous beyond his propensity to traffic drugs. Although the Court cannot be certain that Simon would not participate in violence following release, various factors make this unlikely. These include Simon's advanced age and failing health, the restrictions on Simon's conduct attendant to his five-year supervised release term, and the deterrent effect of the supervised release regime. For avoidance of doubt, the Court advises Simon that any criminal conduct following his release from FCI Fort Dix, which would constitute a violation of the conditions of supervised release, would legally support—and almost certainly result in—a new prison term as punishment for the violation.

As at sentencing, the Court acknowledges both the seriousness of Simon's crimes and his extensive criminal history, as well as the apparent ineffectiveness of the litany of past sentences imposed. *See* Sent. Tr. at 33–34 (discussing destruction caused by drug trafficking); *id.* at 39 (noting the need for the sentence imposed to be a "more effective and louder wake-up call than [Simon's] prior sentences."). But as of now, Simon has served nearly 27 months of a sentence that, assuming full good time credit, would total approximately 44 months. *See* Gov't Mem. at 2. With slightly more than 17 months of expected incarceration ahead of him, Simon has therefore served well more than half of his ultimate sentence.[7] And even were Simon less far along in his sentence, given his unusual vulnerability to COVID-19 even within the universe of individuals at heightened risk, the § 3553(a) factors favoring his release would take on outsize importance. There is too great a risk to Simon that his continued incarceration in the face of the pandemic could function as a death sentence. Given the heightened risk to Simon presented by the pandemic, and the Court's judgment that he does not present a meaningful danger to the public, the Court concludes that in this unusual case, the § 3553(a) factors will be served, and a just sentence imposed, by granting compassionate release, enabling Simon to begin serving a term of supervised release under the close supervision of the Probation Department, subject to the terms of supervised release to be determined in accordance with the discussion below.

---

[7] *Cf. United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion for defendant in generally good health who had served 7 months of a 27-month sentence); *United States v. Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for recently sentenced defendant with asthma and a cardiac condition who had served 15 months of 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for an elderly defendant who had served just two months of a 33-month sentence).

Further, in two analogous circumstances involving two of Simon's co-defendants, Edward Davies and Louis Brown—each an older defendant in ill health whose participation in fentanyl sales was motivated by the urge to feed his own drug habit—this Court has granted compassionate release.[8]  According to Simon, the only material differences between those two applications and his are (1) Davies had a definite place of post-release residence, whereas Simon admittedly does not; and (2) Brown had a less extensive criminal history than Simon's.  Def. Mem. at 12.  The Government, notwithstanding the Court's order directing counsel to compare Simon's circumstances to those of Davies and Brown, has declined to do so.  Simon's assessment of the limited salient points of contrast between himself and these comparators is thus unrefuted.

The Court finds the case of Edward Davies especially instructive.  Davies, age 60, also had serious underlying medical conditions, although ones that were arguably less serious than Simon's.  *See* Def. Mem. at 12.  Like Simon, Davies was also a heroin addict, and funding his addiction was the motivation for his participation as a low-level distributor in the fentanyl-trafficking conspiracy headed by Maurice Hartley.  *See id.*  Also like Simon, Davies had dozens of prior convictions and yet had been "completely undeterred."  *See Davies*, No. 18 Cr. 390

---

[8] *See Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (granting, for substantially the same reasons, release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 (S.D.N.Y. Jun 17, 2020) (same).  And colleagues have likewise done so in similarly factually compelling cases.  *See, e.g.*, *United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481, at *8–9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release motion for 55-year-old defendant with hypertension and other conditions who had served a little over half his sentence); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *4–5 (S.D.N.Y. Apr. 13, 2020) (granting compassionate release motion for 62-year-old high-risk defendant who is not a danger to society); *United States v. Zuckerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5–6 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release motion for 75-year-old defendant with health issues); *United States v. Delgado*, No. 3:18 Cr. 17 (VAB), 2020 WL 2464685, at *3–4, 6 (D. Conn Apr. 30, 2020) (granting compassionate release motion for high-risk defendant who had completed 29 months of a 120-month sentence).

(PAE), Dkt. 349 ("Davies Sent. Tr.") at 21. At Simon's sentencing, the Court noted their similarity in that regard: "You were responsible for the same amount of drugs in connection with [the scheme] as Mr. Davies. . . . Mr. Davies is in the same criminal history category as you." Sent. Tr. at 47. And, when he applied for compassionate release, Davies had 25 months left to serve on his 60-month sentence. Def. Mem. at 12. Nonetheless, earlier this summer, the Court found compassionate release warranted for Davies, for essentially identical reasons to those that Simon asserts here. *See Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7. In terms of the § 3553(a) factors of the nature of the offense, the need for specific deterrence, and the need to protect the public from further offenses by the defendant, the Court sees little daylight between these two cases. Particularly given the interest identified in § 3553(a)(6) of avoiding an unwarranted sentencing disparity between defendants "with similar records who have been found guilty of similar conduct," the Court finds that this comparison further favors Simon's early release.

Louis Brown is also a fair comparator for Simon, insofar as he was also convicted for low-level drug trafficking in connection with the Hartley drug-trafficking organization, had participated in drug-dealing to feed his own drug habit, and had serious health issues. *See* Def. Mem. at 12. Brown, however, had a less extensive criminal history than Simon. *See id.* On balance, the Court views the grant of compassionate release for Brown as also weighing in favor of Simon's release.

The Government briefly raises a final objection: that Simon has not presented a reentry plan that will sufficiently minimize his risk of recidivism. Gov't Mem. at 14. Accordingly, the Government requests that, if release is granted, the Court impose, as conditions of the ensuing term of supervised release, home confinement, as well as drug testing and treatment. *Id.* At Simon's

9

sentencing, the Court imposed a number of special conditions of supervised release intended to support Simon's lawful reintegration into society, including mandatory inpatient drug treatment and residence in a halfway house. *See* Sent. Tr. at 49–50. Simon's memorandum in support of his application for release recognizes that he will be subject to these requirements upon release. *See* Def. Mem. at 13–14. The extent to which those conditions will prove immediately feasible is, however, uncertain given (1) Simon's deteriorating health and the consequent need for increased medical care; and (2) the limitations imposed by the COVID-19 pandemic. The Court is, however, underwhelmed by Simon's proposed release plan—to stay with a close friend for several months before, hopefully, enrolling in and receiving support from New York City's HIV/AIDS Services Administration ("HASA") program—as this plan is subject to its own uncertainties and affords Simon considerably less rigorous early supervision than the halfway-house plan ordered by the Court at sentencing.

      The Court regards it as imperative that Simon be released promptly, and therefore that a release plan that entails a level of supervision consistent with that afforded by a halfway house and that readily enables drug treatment be in place at the time of release. Such is necessary to give Simon a viable chance to lawfully and successfully reintegrate into society. It is untenable, however, for the Court to continue to extend, *ad infinitum*, the deadline for such a plan to be negotiated. The Court accordingly directs the U.S. Probation Department to consult with the Government and the defense, and, by September 2, 2020, to file a letter on the docket of this case that (1) identifies a halfway house or equivalent facility at which Simon can productively reside upon his release from custody; (2) identifies a drug treatment program that will admit Simon and in which he can promptly participate upon release; and (3) proposes modifications, if any, to the current terms of supervised release necessary to take into account present circumstances. The

Probation Department's proposed terms should set out the means by which the Probation Department plans to monitor Simon's whereabouts and compliance following release from prison. The Government and defense may then submit their responses, if any, to the Probation Department's filing by September 4, 2020. Following receipt of these submissions, the Court will issue an order formally releasing Simon subject to the supervised release terms it approves.

  For the foregoing reasons, the Court grants Simon's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Simon is not to be released forthwith, but will be released upon the Court's approval of modified conditions of release, which the Court expects to issue shortly after the September 4, 2020 deadline for the parties' submission on this point. To assure that the deadlines set herein are met, the Court directs the Government forthwith to alert the Probation Department to this order, and particularly to the September 2, 2020 filing deadline applicable to the Probation Department.

  SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: August 27, 2020
   New York, New York